UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DENNIS FRENCH, LYNN FRENCH,
DR. BRENDA O'MALLEY,
CATHERINE WILT, VERN BARKEL,
and JOYCE BARKEL,

      Plaintiffs,

v.                                    Case No. 1:07-CV-817

ESSENTIALLY YOURS INDUSTRIES, INC.,      HON. GORDON J. QUIST
ESSENTIALLY YOURS INDUSTRIES CORP.,
ESSENTIALLY YOURS INDUSTRIES
(Canada), INC., RONALD BOERSEMA,
and DONNA BOERSEMA,

      Defendants.
_____/

**OPINION**

Plaintiffs, several Independent Business Associates for Defendants who were recruited to sell Defendants' products and recruit additional IBAs, have sued Defendants, alleging a claim for violation of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77a, *et seq.*, for failing to register the "Precious Metals Program: The Code Blue Profit Sharing Plan" (the "Code Blue Plan") as required by Section 5(a), 15 U.S.C. § 77e(a), of the 1933 Act. Plaintiffs also allege various state law claims which, as set forth in Plaintiffs' Third Amended Complaint, include violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L. §§ 445.903, *et seq.*, and violation of the Michigan Uniform Securities Act, M.C.L. §§ 451.701, *et seq.*

Presently before the Court is Plaintiffs' motion to certify the case as a class action. For the reasons set forth below, the Court will grant the motion.

## I. **Background**

Defendants sell various consumer products, including dietary supplements, fuel additives, and Code Blue water filtration systems – the product at issue in this case. Defendants sell their products through a multi-level marketing scheme. That is, they recruit Independent Business Associates ("IBAs") to sell products, and the IBAs in turn recruit additional IBAs, and so forth, resulting in a pyramid-type organizational structure. In addition to suing the Essentially Yours family of companies, Plaintiffs have sued Ronald Boersema and Donna Boersema (the "Boersemas"), who Plaintiffs allege are top level IBAs for Defendants and apparently recruit IBAs in the West Michigan area.

Plaintiffs are IBAs recruited by the Boersemas to sell Defendants' products and recruit additional IBAs and, therefore, are in the Boersemas' "downline" in the pyramid.

The Code Blue Plan provides three ways in which an IBA can make money: (1) resale of Code Blue water filtration systems; (2) commissions based upon the volume of products ordered by the IBA and the IBA's downline; and (3) annual distributions from a profit sharing pool based upon the number of Code Blue systems sold worldwide. This last component is referred to as the "Precious Metals Program." Defendant's promotional materials describe the Precious Metals Program as "an opportunity for [IBAs] to share in the world wide annual sales of all [Essentially Yours] Code Blue Systems."

The Precious Metals Program has four different participation levels depending upon the amount of the initial investment: (1) the Platinum level, requiring an initial investment of $5,030.80; (2) the Gold level, requiring an initial investment of $3,045.45; (3) the Silver level, requiring an initial investment of $2,030.30; and (4) the Bronze level, requiring an initial investment of $1,015.15. The maximum potential distributions from the profit sharing pool vary by level, the

highest being at the Platinum level and the lowest being at the Bronze level. In order to be eligible for profit sharing, an IBA is required to: (1) purchase a Platinum, Gold, Silver, or Bronze package; (2) maintain a monthly minimum business volume; (3) remain current with the annual membership fee; and (4) in each period for determining the distribution, either enroll a new or existing IBA with a Platinum, Gold, Silver, or Bronze package or purchase an additional 108 Code Blue filtration systems.

Plaintiffs purchased the Platinum package, and in exchange for their payment of $5,030.80, received 90 Code Blue systems for resale, along with the right to have EYI place $1.50 per Code Blue filtration system sold into the profit sharing pool. Plaintiffs were initially entitled to a maximum annual profit sharing payment of $25,000, but Defendants subsequently increased this amount to $35,000.

On May 13, 2008, the Court issued an Opinion and Order denying Defendants' motion to dismiss and granting Plaintiffs partial summary judgment on the issue of whether the Code Blue Plan constitutes a security under the Securities Act of 1933.

In the instant motion, Plaintiffs request that the Court certify three separate classes under Federal Rule of Civil Procedure 23(b)(3). The first proposed class, based upon Plaintiffs' federal securities claim, is described as:

> All persons and entities throughout the United States and its territories (other than named defendants) that have purchased Code Blue Water Filtration Systems as a "Precious Metal Pioneer" from or through any of the corporate defendants.

The second class, premised upon Plaintiffs' MCPA claims and state business opportunity or seller assisted marketing laws, is described as:

> All persons and entities who, at the time of becoming Precious Metal Pioneers, resided in California, Florida, Georgia, Iowa, Illinois, Indiana, Louisiana, Maryland, Michigan, Minnesota, North Carolina, Nebraska, New York, South Dakota, Texas,

3

> Utah, Virginia, Washington, and Wisconsin (other than named defendants) that have purchased Code Blue Water Filtration Systems as a "Precious Metal Pioneer" from or through any of the corporate defendants.

Finally, Plaintiffs' third proposed class, based upon Plaintiffs' claim for violation of the Michigan Uniform Securities Act , is described as:

> All persons and entities throughout the United States and its territories (other than the named defendants) that have purchased Code Blue Water Filtration Systems as a "Precious Metal Pioneer" from or through any of the corporate defendants.

## II. Motion Standard

A district court has discretion to determine whether a case should proceed as a class action under Federal Rule of Civil Procedure 23. *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 761 (6th Cir. 2005 ) (citing *Mayer v. Mylod*, 988 F.2d 635, 640 (6th Cir. 1993)). The Supreme Court has instructed district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982). Before certifying a class, a district court must determine whether the action satisfies all four prerequisites in Fed. R. Civ. P. 23(a) and at least one of the conditions in Fed. R. Civ. P. 23(b). *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 996). The movant bears the burden of proof. *Id.* "Although a hearing prior to the class determination is not always required, 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Id.* (quoting *Gen. Tel. Co.*, 457 U.S. at 160, 102 S. Ct. at 2372).

Rule 23(a) requires a plaintiff to demonstrate that the proposed class is sufficiently numerous; that it presents common issues of fact or law; that it will be led by one or more class representatives with claims typical of the class; and that the class representative will adequately represent the class. *See Gen. Tel. Co.*, 457 U.S. at 161, 102 S. Ct. at 2372. In determining whether a plaintiff meets the requirements for class certification, a court may not judge the validity of the

plaintiff's claims. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (quoting *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983)).

### III. Discussion

#### A. Rule 23(a) Requirements

##### 1. Numerosity

Numerosity exists where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Whether joinder is impracticable depends on the particular circumstances of each case. *Weaver v. Reagen*, 701 F. Supp. 717, 721 (W.D. Mo. 1988). Factors that a court may consider are class size, ease of identification of class members, and the ability of class members to pursue individual actions. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). A plaintiff need not prove the number of class members to a certainty. *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 672 (N.D. Ohio 1995). The Court may make common sense assumptions in examining the numerosity requirement. *See Vickery v. Jones*, 856 F. Supp. 1313, 1328 (S.D. Ill. 1994). While not an absolute rule, it is generally accepted that a class of 40 or more members is sufficient to establish numerosity. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)(stating that "numerosity is presumed at a level of 40 members") (citing 1 Newberg On Class Actions, 2d, § 3.05 (1985 ed.)).

Plaintiffs contend that they have met their burden of demonstrating numerosity because the class consists of at least 102 putative members, including 49 platinum, 8 gold, 9 silver, and 36 bronze Precious Metal Program purchasers. Plaintiffs also contend that joinder would be impracticable because the class members are located in different states around the country, and they note that the relatively small size of the potential claims (from approximately $1,000 to $5,000) makes it unlikely that the class members would bring individual actions to recover these sums.

Defendants do not dispute that there are 102 purchasers of the Precious Metals Program. They contend, however, that the actual number in the class may not even be 40 because a number of IBAs continue in a positive business relationship with Defendants and are receiving commissions on a monthly basis. In addition, Defendants note that some of the class members have been given refunds of the money they paid for their Code Blue filtration systems. Defendants assert that in light of these circumstances, a substantial number of putative members will decline to participate in the class, such that the class will be substantially smaller than Plaintiffs contend.

Defendants provide no affidavits from putative class members in support of their argument, nor do they cite any authority for the proposition that is appropriate to exclude from consideration of the size of the class those members who may not be interested in asserting a claim against the defendant. In fact, courts have rejected similar arguments when deciding whether to certify a class. *See Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986) (stating that "the fact that the class may initially include persons who have not had difficulties with their V8-6-4 engines or who do not wish to have these purported problems remedied is not important at this stage of the litigation") (citing 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1760 at 581); *Elliott v. ITT Corp.*, 150 F.R.D. 569, 575 (N.D. Ill. 1992) ("A class may be certified even though the initial definition includes members who have not been injured or do not wish to pursue claims against the defendant."). Thus, even if some of the putative class members have no interest in pursuing claims against Defendants, that consideration is not pertinent at this stage.

Because Plaintiffs have shown that the proposed class is sufficiently numerous and that joinder of all members would be impracticable, the numerosity requirement is satisfied.

**2.      Commonality**

The second prerequisite to class certification is that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class." *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citing *In re Am. Med. Sys.*, 75 F.3d at 1080). Cases alleging a single course of wrongful conduct are particularly suited for class treatment. *See id.*

This case involves common issues of law and fact that satisfy the commonality requirement. One issue of law, which the Court has already answered in the affirmative, is whether the Code Blue Plan was a security. Another common question is whether Defendants failed to properly register the Code Blue Plan as a security and/or business opportunity. Finally, there is a common question of fact with regard to the truthfulness of Defendants' representations about the Code Blue filter's ability to remove or eliminate arsenic from tap water.

Defendants concede that there are common issues of law and fact as to the issue of liability, but they contend that calculation of damages presents a major issue that requires an individualized assessment, rendering class treatment inappropriate. Even if there are issues such as damages that require individual treatment, certification as a class is still appropriate so long as there remains "a common issue the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1988). Moreover, "[v]arying damage levels rarely prohibit a class action if the class members' claims possess factual and legal commonality." *Eddleman v. Jefferson County*, No. 95-5394, 1996 WL 495013, at *6 (6th Cir. Aug. 29, 1996).

### 3.     **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. The inquiry concerning typicality is whether the class claims are fairly encompassed by the named plaintiff's claims. *Id.* In other words, typicality is satisfied where there is a sufficient relationship between the injury to the named plaintiff and the conduct affecting the class, but it is not satisfied when the named plaintiff can prove his own claim but not "necessarily have proved anybody else's claim." *Sprague*, 13 F.32d at 399.

Plaintiffs' claims meet the typicality requirement because they concern Defendants' sale of the Precious Metal Program to Plaintiffs, which essentially involves the same practice or course of conduct directed at all members of the class. Plaintiffs' claims raise issues of whether Defendants failed to properly register the Code Blue Plan under the 1933 Act or under various state laws and whether Defendant's assertions regarding the efficacy of the Code Blue filtration system in removing arsenic from tap water were false. Putative class members would have similar claims because they engaged in the same types of transactions with Defendants. Thus, Plaintiffs' claims are not different than those of the proposed classes.

Defendants contend that Plaintiffs' claims are not typical because several of the putative class members at each level have made substantial commissions and still order products on a monthly basis. Defendants further posit that some of the class members may have sold all of their Code Blue pitchers and thus have no damages. However, Defendants fail to show why any putative

class member who engaged in the same type of transaction with Defendants would not possess claims similar to those of the named Plaintiffs. Furthermore, the possibility that some members may have different damages or none at all "does not preclude a finding that the typicality requirement is satisfied." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

### 4. Adequacy

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R Civ. P. 23(a)(4). This inquiry concerns whether class counsel are qualified and capable of conducting the litigation and whether the named class representatives have interests that are antagonistic to the class. *See Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to 'vigorously prosecute the interests of the class.'" *Id.* (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083). "Class representatives are adequate when it appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel, which will usually be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (internal quotations and citations omitted).

The Court has reviewed class counsels' qualifications and concludes that counsel has sufficient knowledge, resources, and experience to represent the interests of class members. In particular, attorney Ronald J. VanderVeen has several years of experience in prosecuting complex litigation and has served as counsel in two prior actions certified as class actions. Although VanderVeen's associate, Carl J. Gabrielse, has substantially less experience, he has handled other

litigation and has demonstrated his proficiency in handling the issues in this case through the briefs and other papers he has filed.

Defendants do not dispute class counsels' qualifications. They contend, however, that Plaintiffs are ill suited to serve as class representatives because their interests are opposed to those class members who are successful and still earning commissions from the sale of Defendants' products. Defendants contend that Plaintiffs' purpose is essentially to undermine the successful class members' relationship with Defendants and that Plaintiffs should not be permitted to interfere with that relationship.

In spite of Defendants' protestations, the Court concludes that Plaintiffs will adequately protect the interests of the class members, do not have an interest adverse to the proposed classes, and will vigorously prosecute the litigation. Defendants' argument is really that this action should not proceed as a class action, not that Plaintiffs are improper class representatives. Under Defendants' logic, any class representative would be inadequate simply because there may be some class members who do not wish to participate in this case or assert claims against Defendants. This does not render Plaintiffs incapable of representing the interests of class members.

**B.     Rule 23(b)(3) Requirements**

Plaintiffs request that the Court certify the proposed classes under Rule23(b)(3), which provides that a class may be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In determining whether certification of a Rule 23(b)(3) class is warranted, courts should consider:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B)    the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

    (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D)    the likely difficulties in managing a class action.

*Id.*

The predominance inquiry examines "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997). This requirement is satisfied if the issues that are subject to generalized proof, and thus applicable to the class as a whole, predominate over issues that are only subject to individualized proof. *See Beattie*, 511 F.3d at 564 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (11th Cir. 2000)). Because this case involves two proposed multi-state classes for the state law claims, the Court must consider whether a choice of law analysis is necessary and, if so, whether the application of a particular state's law would violate certain constitutional limitations. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22, 105 S. Ct. 2965, 2979 (1985). An actual conflict of laws exists when "the applicable law from each jurisdiction provides different substantive rules, the differences are relevant to the issue at hand, and the differences must have a significant possible effect on the outcome of the trial." *@Wireless Enters., Inc. v. AI Consulting, LLC*, No. 05-CV-6176 CJS(P), 2006 WL 3370696, at *4 (W.D.N.Y. Oct. 30, 2006) (quoting *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005)) (internal quotations omitted). A choice of law analysis is unnecessary where there is no actual conflict because "[t]here can be no injury" in applying a particular state's law absent a true conflict. *Shutts*, 472 U.S. at 816, 105 S. Ct. at 2976.

Turning to Plaintiffs' federal securities claim, the Court first notes that there is no choice of law issue because the claim is based upon federal law. Given the nature of this claim – arising from the same conduct directed toward all class members – the Court concludes that the issues subject to generalized proof, such as whether the Code Blue Plan is a security and whether it was properly registered, predominate over any issues subject to determination on an individualized basis.

Plaintiffs' business opportunity law and Blue Sky claims, both based upon state law, raise choice of law issues. However, Plaintiffs have submitted multi-state surveys reviewing the business opportunity and Blue Sky laws for the states covered by the proposed classes. Based upon its review of those documents, the Court cannot ascertain any meaningful differences in the various laws. Thus, it appears that there is no actual conflict necessitating a choice of laws analysis.[1]

As is the case with the federal securities law claim, Plaintiffs' business opportunity law and Blue Sky law claims both meet Rule 23(b)(3)'s predominance requirements. With regard to the business opportunity law claim, whether the Code Blue Plan was a business opportunity and whether it was properly registered are issues common to the class that predominate over any issues requiring individual proofs. Similarly, whether the Code Blue Plan is a security under state Blue Sky laws and whether it was properly registered are two common issues that predominate over any individual issues that may arise.

The final question the Court must address in its Rule 23(b)(3) analysis is whether the form of a class action is superior to other means for handling the litigation. Given the nature of the claims, a class action would be the most cost effective and efficient form of handling the claims. In particular, the liability issues raised by each of the claims are, perhaps entirely, based upon a set

---

[1] Defendants do not contend that any actual conflict exists.

of facts common to each class member. A single, controlling determination of these issues will limit the time and expense involved for all parties. In addition, the relatively small size of the individual claims favors class treatment. While the claims in this case are not *de minimis*, the fact that no other litigation has been filed against Defendants suggests that class members do not have a greater interest in pursuing individual claims in separate actions.

### IV. Conclusion

For the foregoing reasons, the Court concludes that the proposed class meets all four requirements of Rule 23(a) as well as the predominance and superiority requirements of Rule 23(b)(3). Accordingly, the Court will grant Plaintiffs' motion.

An Order consistent with this Opinion will enter.


Dated: July 16, 2008                               /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE